CASE 12—PETITION ORDINARY—JUNE 26.

# Hibler v. Shipp.
# Hildreth v. Same.

APPEAL FROM BOURBON CIRCUIT COURT.

1. The petition, as amended, contains a cause of action.

2. "Ordered, that this cause be dismissed at defendant's cost, and leave is given the plaintiffs to withdraw the note sued on, by leaving a copy in the papers," is no final judgment, and cannot be pleaded in bar of a subsequent action.

3. That the obligee promised to sue, and did sue, on the note upon the mere verbal request of the surety, and afterwards dismissed his suit, is no defense to another action upon the obligation. The surety must, according to the statute, give notice to the obligee in writing.

4. There is no error in the instructions.

Hibler v. Shipp. Hildreth v. Same.

PRALL & DICKSON AND A. DUVALL FOR APPELLANT.

1. The petition does not contain a cause of action. (Huffaker v. National Bank, Somerset, 12 Bush, 289.)

2. The dismissal of the former suit is a final judgment, and bar to the present action. (Freeman on Judgments, 19; Bank of Commonwealth v. Hopkins, 2 Dana, 395; Wood v. Ramond, 42 Cal. Rep., 644; 7 J. J. Mar., 165; 3 B. Mon , 741; 3 Met., 29.)

3. Appellee promised to sue upon the note, and did sue, but afterwards dismissed the suit without appellant's consent. This released the appellant. (Story's Eq. Jurisprudence, secs. 324-5; Brandt on Surety-ship Guaranty, sec. 206; White & Tudor's Leading Cases in Eq., vol. 2, pp. 371, 380; Sneed's ex'r v. White, 3 J. J. Mar., 526.)

4. The Court erred in its instructions. (Civil Code, sec. 333, subsec. 2; 3 Met., 10; Ibid, 18; 9 Bush, 593.)

G. C. LOCKHART AND W. LINDSAY FOR APPELLEE.

1. The alleged defect in the petition is formal, and is cured by the verdict. (4 J. J. Mar , 529; Hardin, 302.)

2. The order of March, 1877, dismissing the former suit, is no bar to this action. (Harris v. Tiffany, 8 B. Mon., 225; 7 Wallace, 107; Freeman on Judgments, secs. 261, 262.)

3. That appellee promised to sue, and did sue, upon the *verbal* request of appellant, and afterwards dismissed his action, furnishes no defense to this suit. (Gen. Stat., chap. 104, sec. 11; 12 Wharton, 54; 6 Howard, 283; 17 Wendell, 501; Abell v. Alexander, 45 Ind. ; Chitty on Bills, 407; Daniels on Negotiable Instruments, vol. 2, pp. 292-3-4; 47 Ala., 355; 3 Bibb, 115; 4 Ibid, 269.)

4. The third instruction is prejudicial to appellee. The others are sustained by authority. (Preston v. Hemming, 6 Bush, 560.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant Hildreth being the surety of Hibler on a note for about six thousand dollars, was sued by the payee Shipp, and judgment obtained against him in the Bourbon Circuit Court, at its April term, in the year 1878. The case is brought to this Court for revision by the surety, and the following errors assigned:

1st. The petition fails to present a cause of action.

2d. A former adjudication of the matter in controversy.

3d. Bad faith on the part of the payee towards the surety, amounting to fraud.

The petition as amended presented a cause of action.    It is alleged ''that by a writing dated the 24th of December, 1875, which defendants Hibler and Hildreth signed and delivered to the plaintiff, made part of the petition and filed, promised to pay sixty-one hundred and sixty-nine dollars and thirty-seven cents to the plaintiff,'' &c.

In adhering to the rules of grammar, the verb *promised* stands without a nominative; still the note itself is made a part of the petition, and constitutes the basis of the action; and if not made part of the pleading, it would be technical to hold that the word *promised* had no reference to the defendants, when it is expressly alleged that they signed the writing upon which the recovery is sought.

A former action had been instituted by the appellee against these parties on the same note, and in that proceeding the following order was made: ''Ordered, that this cause be dismissed at defendant's cost, and leave is given the plaintiff to withdraw the note sued on by leaving a copy in the papers.''   This order is claimed by the appellant to be a final judgment, and is pleaded in bar to the present action. It is alleged that the action was dismissed in pursuance of an agreement between the plaintiff and the principal obligor, without the knowledge or consent of the surety (appellant), and that under the agreement the entire subject-matter of the action was disposed of.

The legal effect of an order *dismissed agreed* will prevent a recovery on the same cause of action between the same parties, and must be regarded as an adjustment of the controversy.    Such was the opinion of this Court in the case of the Bank of the Commonwealth v. Hopkins, 2 Dana. There is nothing found in such an order or judgment that would lead the mind to any other conclusion than that the

parties, by an agreement, had adjusted the differences between them. In this case, however, it is plain that the order of dismissal was not regarded as a judgment on the merits, or intended as an abandonment by the appellee of his right to prosecute another action on the same obligation. No defense had been interposed by the obligor, and the leave given the plaintiff to withdraw the note ˎ indicates clearly the purpose of the appellee to hold it as the evidence of the indebtedness by the appellant, with the right to coerce payment as if no such action had been instituted. This question is directly decided in the case of Harris v. Tiffany & Co., 8 B. Monroe, page 226. The facts of this case are, that the attorney of the plaintiff undertook and did dismiss the action on the promise of the principal obligor to pay the interest; and while, if the order could be construed as a judgment on the merits, such evidence would be inadmissible to explain it, it sustains the wisdom of the rule determining the legal effect of such entries by the clerk. An order like that can be regarded only as a dismissal of the action without prejudice. The principal defense in the case is, that, prior to the first action instituted by the appellee, the appellant notified him verbally to bring that action, and the suit was brought and afterwards dismissed without the consent or knowledge of the surety; that the fact of bringing the action prevented the appellant from giving the legal notice, and the false promise on the part of the appellee, and his conduct in dismissing the action, was a fraud upon the rights of the surety, and exonerated him from all liability. The 11th section of chapter 104, General Statutes, provides the manner in which a surety may require the payee to coerce payment, and if the latter fails to sue as required, the surety is released. The notice to sue *must* be in writing;

and if the creditor fails to sue to the next term thereafter
at which he can obtain judgment, and in good faith pros-
ecute the suit, &c., the surety shall be discharged from all
liability, &c.

The statute further provides: ''The written notice herein
required shall not be waived, unless such waiver be in writ-
ing, and no waiver of such notice shall be plead as a defense
or given in evidence unless such waiver be in writing.''

Prior to the enactment of this last clause of the statute,
sureties were often released upon proof showing that the
holder of the note had waived written notice, and thereby
dispensed with this particular provision.    Such evidence was
held competent on the ground that the surety had been mis-
led by this parol agreement with the payee.

The facility with which this character of proof was ob-
tained induced the Legislature to prescribe a different and
higher grade of evidence on the part of those when seeking
to avoid liability upon written promises to pay.    The surety
in this case is relying, as is insisted, not on the promise to
bring the action, but upon the fact that the action was brought
in accordance with the promise, and a failure on the part of
the payee to prosecute it in good faith.    The surety testifies
that the action was instituted in accordance with the prom-
ise made by the payee, and the latter that no such promise
was ever made.    The evil attempted to be corrected by the
statute must still exist if such evidence is competent, or if
the attempt to carry out such a promise is made the basis of
a defense by which the surety is released from liability.    The
fact of bringing the action may have prevented the appellant
from giving the written notice, but the promise to sue cannot
be connected with the action taken by the appellee for the
purpose of showing that his object was to mislead and

deceive the surety. The appellant had no right to rely on the promise of the appellee, if any such was made, or to connect the promise with the fact that an action was instituted so as to make out his defense.

He should have given written notice, and cannot avail himself of the fact that suit was brought as a waiver on the part of the appellee of the right to such a notice.

The promise to sue cannot be given in evidence, and the defense must rest alone on the fact that the appellant was the surety, and that appellee, knowing this fact, instituted an action against the principal and dismissed it without the consent of the surety. If this releases the surety, the demurrer to this paragraph of the answer should have been overruled.

The fraud or bad faith alleged consists in the promise to sue, the bringing of the action, and its dismissal. We have seen that the promise to sue cannot be regarded as any evidence of fraud, and the mere fact that the action was dismissed upon the payment of the interest or on the promise to pay the interest then due, did not prejudice the rights of the surety. No lien had been acquired by the appellee on the property of the principal obligor, or the rights of the surety jeopardized in any other way than the mere indulgence of the principal obligor by his creditor; and this has never been held as releasing the surety. The surety could compel the creditor to sue, or if not, effect his release by complying with the provisions of the statute; and having failed to do so, the mere naked indulgence by the payee until the obligor becomes insolvent will not release the surety. The surety had the right, in this case, to pay the creditor, and at once coerce payment from the party for whom he was liable. This right was never impaired by any agreement be-

tween the payee and the principal debtor; and a mere indulgence, that impairs no rights of the surety, cannot have the effect to release him.

It was pleaded in one paragraph of the answer that, in consideration of Hibler agreeing to pay costs, that additional time was given for the payment of the money. This question was submitted to the jury under a proper instruction, and a verdict for the plaintiff. The evidence establishes no bad faith on the part of Shipp; and as the case was presented to the jury, and we think properly, there was no escape from the verdict and judgment against the surety.

Judgment affirmed.

RESPONSE TO PETITION FOR REHEARING.

In this case, the contract of indulgence is alleged to have been given in consideration of the payment of the interest, cost, and attorney's fees. The entire testimony on this subject applies to all three of the considerations, and if the jury had found on this issue for the defendant, they must have found that the contract was as alleged, as there was no testimony authorizing them to single out any one consideration and say that it was this consideration causing the indulgence. If they allowed the *interest* at all, they must have believed that it was for the payment of the costs, interest, and attorney's fees; therefore, the instruction could not have prejudiced the appellant. The only trouble this Court had was on the principal question involved, and we think a proper construction has been given the statute.

Petition overruled.