833 F.2d 1012
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linda GRAVES (Barkley); Samuel C. Barkley, II; and Ruth
Graves, Plaintiffs- Appellants.
v.
UNITED STATES of America, acting By and Through the SMALL
BUSINESS ADMINISTRATION; Small Business Administration;
James A. Sanders, in his official capacity as Administrator
of the Small Business Administration; and First Security
National Bank and Trust Company, Defendants-Appellees.
 No. 86-5796.
 United States Court of Appeals, Sixth Circuit.
 Nov. 13, 1987.
 
 Before KEITH, MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants appeal from the district court's order granting summary judgment in favor of defendants-appellees in this declaratory judgment action seeking to secure plaintiffs' title to certain stocks and real property. For the reasons that follow, we affirm the judgment of the district court.
 
 I.
 
 2
 In December of 1978, First Security National Bank ("First Security") made loans of $195,000 and $125,000 to Barkley and Graves Construction Company and Eastern Masonry Company, respectively. The loans were evidenced by the execution of two notes. The loans were partially guaranteed by the Small Business Administration ("SBA"). The loans were also personally guaranteed by the plaintiffs, Linda Graves Barkley, Ruth Graves, and Samuel C. Barkley, II. As collateral, Ruth Graves pledged to First Security shares of common stock in a company known as the Kitchen Planning Center. Additionally, Linda Graves Barkley and Samuel C. Barkley, II, executed a real estate mortgage in favor of First Security.
 
 
 3
 Subsequent to the loan agreement, a dispute arose between First Security and the debtors, Barkley and Graves Construction Company and Eastern Masonry Company, as to obligations under the loan agreements. As a result, the debtors filed an action against First Security in May of 1979, in the Fayette County, Kentucky, Circuit Court. In their action, the debtors alleged that First Security had intentionally and willfully violated the loan agreements by not paying advances when required, thus injuring plaintiffs in the amount of $26,000,000. Joint Appendix at 73. The SBA was not named as a defendant in that action and was not thereafter joined. Joint Appendix at 65. First Security answered and asserted counterclaims seeking $473,205.00 under the notes, plus enforcement of its lien on the pledged stock and a declaration that it had a valid mortgage on the real property of Linda Graves Barkley and Samuel C. Barkley, II.
 
 
 4
 The action was eventually settled between the parties, and a settlement agreement was approved on August 10, 1981. Joint Appendix at 169. The settlement agreement provided:
 
 
 5
 (1) that First Security would make demand on SBA for the guaranteed portion of First Security's loans to Barkley and Graves Construction Company and to Eastern Masonry Company. Joint Appendix at 36.
 
 
 6
 (2) that "[i]f SBA honors the demands of First Security as aforesaid and upon payment by SBA to First Security of the guaranteed portion of such loans as aforesaid, First Security agrees, subject to prior written consent thereto by SBA, that it will not seek any further recovery from Barkley and Graves Construction Company, Eastern Masonry Company, Samuel Barkley, II, Linda Graves Barkley, Ruth W. Graves, Ray Graves and Barkley and Associates ... it being understood, however, that said action by First Security does not in any way affect the rights of SBA with regard to its legal rights to attempt to collect upon the guaranteed portion of the SBA loan."
 
 
 7
 (3) that "[i]t is expressly understood between the parties that the real estate mortgage dated December 7, 1978 ... and the common capital stock of Kitchen Planning Center, Inc. registered in the name of Ruth Graves are each portions of the original collateral for the SBA loans made by First Security securing the indebtedness set forth [above] and that upon payment to First Security by SBA of the insured portion thereof, SBA will have the sole and unqualified right and legal authority to take any further action with regard thereto, including releasing same to Barkley and Graves or proceeding against same for purposes of collection." (Emphasis supplied).
 
 
 8
 The SBA did agree to honor First Security's demand, and, consequently, First Security assigned all of its interest in these two loans, including the pledged stock and mortgage, to SBA. Joint Appendix at 169, 57.
 
 
 9
 The parties, however, did not notify the Fayette County, Kentucky, Circuit Court of their settlement. Joint Appendix at 169. Consequently, in November 1982, the Fayette County, Kentucky, Circuit Court directed the parties to show cause why the action should not be dismissed pursuant to Civil Rule 77.02(2), Kentucky Rules of Civil Procedure. Joint Appendix at 146. CR 77.02(2) provides:
 
 
 10
 At least once each year trial courts shall review all pending actions on their dockets. Notice shall be given to each attorney of record of every case in which no pretrial step has been taken within the last year, that the case will be dismissed in thirty days for want of prosecution except for good cause shown. The court shall enter an order dismissing each case in which no answer or an insufficient answer to the notice is made.
 
 
 11
 As neither party responded to the show cause order, the action was dismissed for failure to prosecute on December 20, 1982. Joint Appendix at 150.
 
 
 12
 Plaintiffs Linda Graves Barkley, Samuel C. Barkley, II, and Ruth Graves then filed the present action on March 28, 1985, seeking a declaratory judgment against both the SBA and First Security that the dismissal of the Fayette County, Kentucky, Circuit Court action was a "dismissal with prejudice and constituted a complete adjudication of the issues presented ... including those causes of action presented in the counterclaim of First Security against plaintiff." Joint Appendix at 10. Plaintiffs alleged that as First Security sought in its counterclaim in the state action to enforce its lien on the mortgage and the pledged stock, the dismissal of the earlier action released any right, title or interest that First Security had against that property. Plaintiffs argued that SBA, as a privy of First Security, was also barred from enforcement.
 
 
 13
 The present declaratory judgment action was initially filed in the Fayette County, Kentucky, Circuit Court but was removed by the SBA to the district court. After removal, the United States answered plaintiffs' complaint and counterclaimed for the amount of the loans outstanding, for enforcement of the pledge of the shares of stock in the Kitchen Planning Center by sale of the stock, and for foreclosure of the mortgage on the real property of Linda Graves Barkley. Joint Appendix at 32-33. Both the plaintiffs and the defendants filed motions for summary judgment.[1] The district court, in its Memorandum Opinion filed June 30, 1986, first found that there are no genuine issues of material fact, and that the action is subject to disposition by summary judgment. Joint Appendix at 168.
 
 
 14
 The district court concluded that the SBA was entitled to summary judgment for the following reasons: (1) that in the plaintiffs' earlier action, the SBA was not named as a defendant; (2) that because the SBA was not a party to the earlier action, it is not bound by any decision therein; (3) that the settlement agreement the plaintiffs reached with First Security reserved the rights of the SBA; and (4) the loans which plaintiffs personally guaranteed remain unpaid. Joint Appendix at 172.
 
 
 15
 Accordingly, the district court granted SBA's motion for summary judgment and concluded that SBA has a valid lien against the shares of pledged stock and a valid mortgage against the real property. Joint Appendix at 173. The court also found that the SBA was entitled to the balance of the outstanding loans First Security made to Barkley and Graves Construction Company and Eastern Masonry Company. Joint Appendix at 173. The plaintiffs appeal the summary judgment for the defendants granted by the district court in its Memorandum Opinion and judgment thereon.[2]
 
 II.
 A.
 
 16
 Plaintiffs argue that the dismissal of the Fayette County, Kentucky, Circuit Court action pursuant to CR 77.02(2) of the Kentucky Rules of Civil Procedure was with prejudice. As a consequence, plaintiffs argue, the claim made by First Security in its counterclaim for enforcement of the lien and payment of the loans is precluded by the dismissal.
 
 
 17
 The district court in the present case made no decision on this issue. Rather, the district court concluded that regardless of the nature of the dismissal, "since the [SBA] was not a named defendant in that action, it cannot be bound by such a dismissal." Joint Appendix at 170.
 
 
 18
 The Kentucky courts have yet to definitively determine whether a dismissal under CR 77.02(2), described as a "housekeeping" rule, is with prejudice. In Polk v. Wimsatt, 689 S.W.2d 363 (Ky.App.1985), the Kentucky Court of Appeals commented on CR 77.02(2) by noting that although a dismissal for failure to prosecute, standing alone, does not operate as a bar under Kentucky common law, dismissal with prejudice does indeed bar assertion of the cause of action so dismissed. Id. at 364. In discussing whether a CR 77.02(2) dismissal is "automatically" with prejudice, the court cited CR 41.02(3) of the Kentucky Rules of Civil Procedure, which provides:
 
 
 19
 Unless the court in its order for dismissal otherwise specifies a dismissal under this Rule and any dismissal not provided for in Rule 41, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.
 
 
 20
 Polk, 689 S.W.2d at 364 (emphasis in original).
 
 
 21
 The court's conclusion was that in view of CR 41.02(3), a dismissal under CR 77.02(2) "would seem" to be automatically with prejudice. Id. Yet, the court stated:
 
 
 22
 [b]ecause of the grave consequences of a dismissal with prejudice, we have no doubt that such a dismissal pursuant to either CR 41.02 for failure to prosecute or CR 77.02 should be resorted to only in the most extreme cases, and that this Court should carefully scrutinize the trial court's exercise of discretion in doing so.... Less drastic remedies, including dismissal without prejudice, would normally suffice to punish a dilatory, but not recalcitrant, party where the rights of other parties have not been prejudiced by the delay.
 
 
 23
 Id. at 364-65 (citation omitted, emphasis added). See also Hertz Commercial Leasing Corp. v. Joseph, 641 S.W.2d 753, 755 (Ky.App.1982) ("[W]e deem a dismissal of litigation to be of a serious nature and accordingly are unwilling to subscribe to the proposition that the effect of an order entered pursuant to a 'housekeeping' rule is one that is to be automatically considered 'with prejudice' to a party's lawsuit.").
 
 
 24
 We have noted that the Kentucky circuit court in the Polk case, however, had specifically stated that the dismissal was with prejudice. That dismissal was then appealed by the plaintiff to the Kentucky Court of Appeals. In an unpublished opinion, the Kentucky Court of Appeals affirmed the dismissal order. Hence, when plaintiff refiled the action, defendants raised the dismissal order as a bar, and the trial court dismissed the second action. Id. at 364. The court in Polk thus felt bound by the earlier affirmance of the dismissal order and as a result affirmed the trial court's dismissal of the plaintiff's complaint.
 
 
 25
 In the present case, however, the Fayette County, Kentucky, Circuit Court did not expressly dismiss with prejudice noting merely, "[n]o cause having been shown why this action should not be dismissed for failure to prosecute, the within action is hereby dismissed at plaintiff's costs." Joint Appendix at 17.
 
 
 26
 Applying Polk to the present case, we conclude that the order of dismissal plaintiffs rely on was not with prejudice. First, the trial court did not state that the dismissal was with prejudice as the court had in Polk. Second, this does not seem to be the type of "extreme case" that would warrant a dismissal with prejudice.
 
 B.
 
 27
 Even if we assume, for the sake of argument, that the dismissal of the Fayette County, Kentucky, Circuit Court action was with prejudice, we nevertheless are led to the conclusion that the SBA's rights were not affected by the dismissal. This result is compelled by the doctrine of sovereign immunity.
 
 
 28
 The United States as a sovereign, whether appearing through its agencies or otherwise, is entitled to unique advantages in litigation. See 14 C. Wright, A. Miller & M. Cooper, Federal Practice and Procedure Sec. 3652 (2d ed. 1985). For example, claims by the United States cannot be barred by the doctrine of laches, United States v. Dalles Military Road Co., 140 U.S. 599 (1891); the government is generally not subject to the defense of estoppel, Utah Power & Light Co. v. United States, 243 U.S. 389 (1916); and, importantly, the United States is immune from suit unless it consents to be sued, United States v. Sherwood, 312 U.S. 584 (1941). Of course, the terms of the government's consent define the jurisdiction of a court hearing an action involving the government.
 
 
 29
 In 15 U.S.C. Sec. 634(b)(1), Congress has granted a limited waiver of sovereign immunity with respect to the SBA. The statute provides that the SBA, through its administrator, may "sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court." But there are restrictions on that consent. For example, the statute prohibits a court from issuing an injunction, garnishment, or attachment against the SBA. Moreover, outside of the statute, traditional notions of sovereign immunity are preserved.
 
 
 30
 In our view, the rights of the SBA cannot be affected outside of the consent statute. Section 634(b)(1) waives sovereign immunity to a limited extent. It provides basically that parties may proceed against the SBA but only as Congress has provided. We hold that where, as in the present case, plaintiffs bring an action against a private party, and where that private party brings a counterclaim that implicates the SBA's rights, the SBA's rights are unaffected unless it is made a party to that action pursuant to the consent statute.[3]
 
 
 31
 In the present case, the SBA was not a party to the litigation between First Security and the debtors in the state court action. Indeed, it appears neither party attempted to join or make a claim against the SBA. As a result, the plaintiffs are precluded from arguing that the SBA's rights were affected by the Kentucky circuit court's dismissal of the litigation between First Security and plaintiffs for failure to prosecute.
 
 
 32
 The parties themselves recognized as much in their settlement agreement. The plaintiffs agreed therein that once First Security released plaintiffs, "said action by First Security does not in any way affect the rights of SBA with regard to its legal rights to attempt to collect upon the guaranteed portion of the SBA loan." Hence, plaintiffs were well aware that SBA would not be affected by the settlement.
 
 
 33
 What plaintiffs hope for is a windfall resulting from the Fayette County, Kentucky, Circuit Court's routine entrance of a dismissal pursuant to its housekeeping rule. The district court reached the correct conclusion in holding:
 
 
 34
 The most important reason why the plaintiffs are not entitled to summary judgment is because it is quite apparent that the loans they personally guaranteed remain unpaid. If the plaintiffs had come forward with evidence that the 1978 loans to Barkley and Graves Construction Company, Inc. and Eastern Masonry Company had been paid in full, they would be entitled to the declaratory judgment they seek in this action. However, they have proffered no evidence that these loans have been paid and they have not even alleged that these loans are no longer outstanding. Additionally, the defendants have submitted credible evidence that no payments have been made on these loans since March of 1979. Due to the fact that the plaintiffs personally guaranteed payment of these loans, they remain liable and the collateral in question continues to stand as security for these loans until they are paid.
 
 
 35
 Joint Appendix at 171.
 
 III.
 
 36
 Accordingly, for the reasons stated, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Defendant First Security did not participate in the motion for summary judgment. By stipulation of the parties, it has been agreed that First Security is not a necessary party to this appeal and will not participate in any way in it. See Stipulation of the Parties, entered October 24, 1986
 
 
 [2]
 In their notice of appeal, Joint Appendix at 175, the plaintiffs also appealed an order of the district court granting the United States leave to file an answer and denying plaintiffs' motion for default judgment. This issue was not briefed or raised at oral argument, and, therefore, plaintiffs are deemed to have abandoned it
 
 
 [3]
 Plaintiffs argue that once First Security assigned the collateral at issue to SBA, SBA became its privy and was under a duty to ask the Fayette County, Kentucky, Circuit Court that it be substituted for First Security as the defendant and counterclaimant. We reject this proposition. The action brought against First Security was a tort action alleging in effect that First Security had intentionally destroyed plaintiffs' business. Whatever might be said of the consent statute, a tort action could not be brought against the SBA in state court but only in a federal district court under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. Sec. 2671 et seq. See A.L.T. Corp. v. S.B.A., 801 F.2d 1451, 1462-63 (5th Cir.1986) (holding that the "sue or be sued" clause of 15 U.S.C. Sec. 634(b)(1) does not authorize suit against the SBA when the claim is cognizable under the FTCA); accord, Northridge Bank v. Community Eye Care Center, Inc., 655 F.2d 832, 834-35 (7th Cir.1981). Thus, where plaintiff could not have brought this action in state court directly against the SBA in the first instance, SBA was under no duty to substitute itself as the defendant in that action